# United States Court of Appeals
## For the First Circuit

No. 02-2609

In Re: Rowanoak Corporation,

Debtor.

———

JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE
FOR THE ESTATE OF ROWANOAK CORPORATION,

Appellant,

v.

ANN WALSH,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya, Circuit Judge,
Stapleton,* Senior Circuit Judge,
and Baldock,** Senior Circuit Judge.

Jeffrey D. Ganz with whom Michael H. Theodore and Riemer
& Braunstein LLP were on brief for appellant.
Gary W. Cruickshank for appellee.

September 18, 2003

*Of the Third Circuit, sitting by designation.

**Of the Tenth Circuit, sitting by designation.

**BALDOCK, <u>Senior Circuit Judge</u>.** Chapter 7 Trustee Joseph Braunstein appeals the district court's order reversing the bankruptcy court's findings of fact and conclusions of law. The Trustee alleged certain payments by the Debtor, Rowanoak Corporation, to Appellee Ann Walsh were fraudulent transfers under Mass. Gen. Laws ch. 109(a), §§ 5 and 6(a). Walsh contends the transfers were payments on loans Walsh had made to the Debtor. After holding an evidentiary hearing, the bankruptcy court found the payments were fraudulent transfers and ordered Walsh to reimburse the Debtor's estate $63,344. Walsh appealed to the district court. The district court reversed, finding the bankruptcy court made several errors of law and fact. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We reverse the district court's judgment.

I.

The Debtor, Rowanoak Corporation, was incorporated in July 1994 by its president and sole shareholder, Darragh Murphy. Rowanoak did business as a general contractor of construction projects, primarily with the City of Boston. Rowanoak performed virtually no labor on its contracts. Instead, Rowanoak, whose only full-time employee and officer was Murphy, hired subcontractors and occasional part-time labor to perform the labor on its projects.

On January 8, 1999, Rowanoak filed a voluntary petition for Chapter 7 relief. During the course of the bankruptcy

proceeding, the Trustee requested that Rowanoak turn over all of its books and records, as well as its canceled checks and bank statements. In response, Rowanoak turned over only canceled checks and bank statements. In reviewing these documents, the Trustee discovered that from March 5, 1997, through May 20, 1997, Rowanoak made six payments from its bank account to Murphy's mother, Ann Walsh. The checks totaled $63,344.[1]

Uncertain about the basis for these checks, the Trustee filed a motion to compel Rowanoak to turn over other books and records to the Trustee. In response to the motion, Murphy, as president of Rowanoak, filed an affidavit stating that Rowanoak "did not maintain any books and records with respect to the financial operations of the corporation," and did "not have any documents in its possession, custody or control that are relevant to payments made by the Debtor to Ann Walsh." The Trustee subsequently commenced an adversary proceeding against Walsh to avoid and recover the payments as fraudulent pursuant to Mass. Gen. Laws ch. 109A, §§ 5 and 6(a). In response, Walsh claimed the checks represented payments on various pre-petition loans made by Walsh to Rowanoak.

---

[1]The six checks were as follows: (1) check number 1235 dated March 5 for $12,000; (2) check number 1237 dated March 6 for $14,000; (3) check number 1282 dated March 21 for $10,000; (4) check number 1306 dated April 7 for $18,244; (5) check number 1308 dated April 7 for $4,100; and (6) check number 1371 dated May 20 for $5,000.

-3-

The bankruptcy court held an evidentiary hearing at which Walsh, Murphy, and the Trustee testified.[2] Walsh and Murphy testified that Walsh made several pre-petition loans to Rowanoak as evidenced by various canceled checks, check registers, and credit card statements. No promissory note, security interest, mortgage, or other documentation existed between Walsh and Rowanoak to substantiate the alleged loans. Instead, Walsh contended the loans were evidenced by credit card statements and canceled checks drawn from bank accounts in the name of Walsh, her husband, and The Dorchester, Inc., d/b/a Ross Common Quilts, a corporation of which Walsh is president. All canceled checks were payable to Murphy individually, except for one check made payable to Home Depot. None were payable directly to Rowanoak. Rowanoak's 1996 and 1997 tax returns did not identify any outstanding loans to Walsh. At the hearing, however, Walsh and Murphy both testified the checks to Murphy were intended to be loans to Rowanoak.

Murphy testified that Rowanoak often had cash flow problems, as it needed to pay subcontractors and laborers before it received payment from the City for completed projects. Because Rowanoak's customers often took sixty days or more to settle their

---

[2]The bankruptcy court held the hearing in conjunction with another adversary proceeding brought by the Trustee against Murphy based on several payments from Rowanoak's bank accounts used for Murphy's personal expenses. The bankruptcy court found in favor of Murphy, and the Trustee appealed to the district court. The district court affirmed. The Trustee does not appeal the ruling in favor of Murphy to this Court.

accounts, Murphy asked her mother, Walsh, for money to pay subcontractors, and then paid the advanced funds back when Rowanoak received payment. Walsh claimed she fronted Rowanoak approximately $144,000, and that Rowanoak still owed her $25,000 when Rowanoak filed for bankruptcy. Walsh did not file a proof of claim until one week before the trial, however, and Rowanoak did not include Walsh on its list of creditors when it filed, under oath, its bankruptcy petition. Based on this testimony and the documentary evidence, the bankruptcy court entered judgment in favor of the Trustee, concluding Rowanoak fraudulently transferred the payments to Walsh in violation of Mass. Gen. Laws ch. 109A, §§ 5 and 6(a).

Walsh appealed to the district court. The district court reversed, finding the bankruptcy court (1) erred as a matter of law by using a preferential transfer analysis when the Trustee had alleged only fraudulent transfers, (2) erred as a matter of law by considering the absence of potentially exculpatory bank statements against Walsh; (3) erred as a matter of law by characterizing the payments to Walsh as capital contributions when the Trustee did not raise that issue; and (4) erred as a matter of fact and law by concluding Rowanoak reasonably should have believed it was incurring or intending to incur debts beyond its ability to pay as they became due.

II.

"In an appeal from the district court reviewing proceedings before the bankruptcy court, we independently review the bankruptcy court's decision, applying the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." In re Perry Hollow Mgmt. Co., Inc., 297 F.3d 34, 38 (1st Cir. 2002). We owe no special deference to the district court's determinations. Id.

A.

The Trustee first challenges the district court's ruling that the bankruptcy court erred as a matter of law by employing a preferential transfer analysis. The Trustee undisputably did not bring a preferential transfer claim under 11 U.S.C. § 547.[3] Rather, the Trustee sought to avoid and to recover fraudulent transfers under Mass. Gen. Laws ch. 109A, §§ 5 and 6. Pursuant to § 5, the Trustee must show the debtor made the transfer or incurred the obligation–

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (ii) intended to incur, or believed or reasonably should have believed that he would

---

[3]Pursuant to 11 U.S.C. § 547, the Trustee may avoid a transfer to a creditor made within 90 days of the petition's filing for an antecedent debt owed by the debtor if the transfer was made while the debtor was insolvent, and the transfer enabled the creditor to receive more than the creditor would receive if the transfer had not been made and the creditor received payment to the extent provided by the Bankruptcy Code.

-6-

incur, debts beyond his ability to pay as they became due.

Pursuant to § 6(a), the Trustee also may avoid fraudulent transfers "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and . . . the debtor became insolvent as a result of the transfer or obligation."

The district court concluded the bankruptcy court erroneously used a preferential transfer analysis based on the following comments the bankruptcy court made during its findings of fact and conclusions of law:

> If, indeed, Ms. Walsh was owed anything by the debtor, in receiving payments of $63,344 during 1997 and holding no security in the debtor's assets, Ms. Walsh essentially came ahead of all other creditors, and it's a basic tenet of the Bankruptcy Code that all creditors who are not protected by valid security interests must share and share alike in whatever dividends can be paid out of the debtor's assets. One creditor can't be paid in preference to others.

We disagree with the district court's conclusion that this statement indicates the bankruptcy court engaged in a preferential transfer analysis. After the above-quoted comment, the bankruptcy court stated:

> The defendant, Ms. Walsh, has not provided sufficient evidence to rebut the Trustee's allegations, either under Mass. General Law Chapter 109(a), Section 5, or Section 6(a). First, there is no credible evidence that Ms. Walsh gave any value to the debtor in exchange for its payments to her. . . .

-7-

> Second, pursuant to Section 5 of Mass. General Law 109(a), during 1997 when the transfers to Ms. Walsh occurred, I find that the debtor reasonably should have believed that it was incurring or intending to incur debts beyond its ability to pay as they become due.
>      . . . Likewise, pursuant to Section 6(a) of Mass. General Law Chapter 109(a), although there is insufficient evidence that the debtor was insolvent at the time the transfers were made, I find that the debtor was rendered insolvent as a result of the transfer to Ms. Walsh.

The bankruptcy court explicitly stated it was analyzing the case under sections 5 and 6, as alleged by the Trustee. And the bankruptcy court's findings that Walsh gave no reasonably equivalent value to Rowanoak in exchange for the payments, that Rowanoak reasonably should have believed it was incurring or intending to incur debts beyond its ability to pay as they become due, and that the transfers to Walsh rendered Rowanoak insolvent are elements of fraudulent transfers under sections 5 and 6 of the Massachusetts fraudulent transfer law. These are not elements of the Bankruptcy Code section governing preferential transfers. Indeed, the bankruptcy court never mentions § 547 in its findings of fact and conclusions of law. See 11 U.S.C. § 547. We therefore conclude the district court erroneously reversed the bankruptcy court on this ground.

## B.

The Trustee next challenges the district court's holding that the bankruptcy court erred as a matter of law by ruling that

Walsh's failure to introduce Rowanoak's bank statements into evidence could be used against her. At the hearing, neither the Trustee nor Walsh introduced Rowanoak's bank statements into evidence. After the close of the Trustee's case but before Walsh's case-in-chief, the bankruptcy court inquired about the bank statements, and both parties indicated they would not be introducing the statements into evidence. In closing, the Trustee argued no evidence showed deposits into Rowanoak's accounts reflecting the alleged loans. In making findings of fact, the bankruptcy court noted that no documentary evidence supported Walsh's contention that she loaned money to Rowanoak other than canceled checks made out to Murphy individually.

The district court concluded the bankruptcy court "could only have drawn this conclusion if it believed that Rowanoak's absent bank statements would not have shown deposits equal in value to [Walsh's] canceled checks." The district court determined the bankruptcy court erroneously held the lack of documentary evidence against Walsh, because the Trustee bore the burden of proving no consideration supported the transfers from Rowanoak to Walsh. According to the district court, "since the burden here was on the [Trustee] to show the absence of consideration, the [Trustee's] failure to prove that Rowanoak did <u>not</u> make deposits equal to the alleged loans was a failure of proof." (Emphasis in original).

We disagree with the district court. The Trustee undisputably has the burden of proving the transfers were fraudulent, and this burden never shifts to Walsh. But the district court seemed to equate the burden of proof with the burden of production.

> The burden of the issue and the duty of going forward with evidence are two very different things. The former remains on the party affirming a fact in support of his case, and does not change at any time throughout the trial. The latter may shift from side to side as the case progresses, according to the nature and strength of the proofs offered in support or denial of the main fact to be established.

9 Wigmore, Evidence § 2487 (Chadbourn rev. 1981); see e.g., In re Minnesota Utility Contracting, Inc., 110 B.R. 414, 418-19 (D. Minn. 1990) (discussing the difference between shifting the burden of proof and shifting the burden of production in response to a prima facie case); In re Uhlmeyer, 67 B.R. 977, 980 (Bankr. D. Ariz. 1986) ("The trustee has the burden of proof to establish the conveyance was made under conditions that bring it within [11 U.S.C.] § 548 [fraudulent transfers], although the burden of going forward with the evidence may shift if the trustee establishes a prima facie case."). If Walsh believed the bank statements would assist her in convincing the bankruptcy court that she loaned Rowanoak certain funds, nothing prevented her from introducing the statements. By choosing not to produce such evidence, Walsh took the risk the bankruptcy court would find against her.

-10-

And contrary to the district court's holding, the Trustee did not suffer a failure in proof by declining to demonstrate the funds did not reach Rowanoak's accounts. Once the Trustee establishes his prima facie case, he need not affirmatively disprove every other potential theory. Cf. In re Senty, 42 B.R. 456, 458 (Bankr. S.D.N.Y. 1984) ("The creditor, however, does not have the burden to disprove all explanations. Upon the establishment of a prima facie case that a debt is nondischargeable, the burden shifts to the Debtor to go forward and offer a credible explanation."). To establish a prima facie case under § 5, the Trustee must show the debtor made the transfer (1) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (2) the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. See Mass. Gen. Laws ch. 109A, § 5.

Whether Rowanoak's bank statements reflect deposits matching Walsh's transfers to Murphy is relevant only to whether Walsh gave reasonably equivalent value to the Debtor in return for its payments to her. Walsh contends she gave reasonably equivalent value in the form of loans. Hence, to meet his prima facie burden, the Trustee had to present sufficient evidence to establish the negative proposition that Walsh did not loan funds to Rowanoak. The Trustee presented evidence that no documents, such as a

-11-

promissory note, mortgage, or security interest supported Walsh's claim that she loaned money to Rowanoak. All Walsh's checks were made payable to Murphy individually, or to Home Depot. None were made payable to Rowanoak. Rowanoak's tax returns reflected no outstanding loans to Walsh. Rowanoak did not list Walsh as a creditor in its bankruptcy petition, even though Walsh alleged Rowanoak still owed her approximately $25,000 in alleged loans. And Walsh did not file a proof of claim until one week before the hearing in this matter. By demonstrating that no documentary evidence supported an inference Walsh loaned funds directly to Rowanoak, that all funds were advanced to Murphy individually, and that neither Rowanoak nor Walsh appeared to acknowledge an outstanding loan until late in the proceedings, the Trustee established a prima facie case that Walsh did not give Rowanoak reasonably equivalent value in the form of loans.[4] The bankruptcy court did not err by crediting this evidence and concluding that Rowanoak received nothing of value.

In addition, even if the bank statements did show evidence of deposits, this would not necessarily disprove the

[4]The district court did not reverse as clearly erroneous the bankruptcy court's finding that no credible evidence supported Walsh's contention she loaned funds to Rowanoak. The evidence presented at trial, as detailed above, supports this finding. As discussed in Part D below, the bankruptcy court's finding that the Trustee made a sufficient showing Rowanoak reasonably should have believed it would incur debts beyond its ability to pay as they became due, the second prong of a § 5 claim, also was not clearly erroneous.

Trustee's theory. The Trustee asserts Walsh did not loan funds to the corporate debtor. Walsh could have given or loaned money to Murphy individually. Simply because Murphy then chose to deposit the funds into Rowanoak's bank account would not prove that Walsh loaned the funds to Rowanoak. Rowanoak and Murphy are two separate legal entities, and a gift or loan to one does not equate to a loan to the other. Seagram Distillers Co. v. Alcoholic Beverages Control, 519 N.E.2d 276, 281 (Mass. 1988) ("It is a basic tenet that a corporation is a legal entity distinct from its shareholders."); In re Plantation Realty Trust, 232 B.R. 279, 282 (Bankr. D. Mass. 1999) ("In Massachusetts, corporations and their shareholders . . . are generally deemed distinct legal entities."). Accordingly, we conclude the district court erroneously reversed the bankruptcy court on this ground.

## C.

The Trustee also challenges the district court's holding that the bankruptcy court erred as a matter of law by characterizing Walsh's transfers as capital contributions. In announcing its findings of fact and conclusions of law, the bankruptcy court stated that "[e]ven if these amounts did find their way into the debtor's bank account . . ., the basic question is were they loans or additional capital? . . . [T]here is no evidence that these were loans rather than additional capital." The district court concluded this was error because the Trustee

never raised the issue of whether the transfers from Walsh to Rowanoak were loans or capital contributions. The district court noted that Walsh was not a shareholder of Rowanoak, and hence could not make capital contributions to Rowanoak.

We conclude the bankruptcy court did not make an error of law. The bankruptcy court's musings on capital contributions constitute dicta. The bankruptcy court made the key finding on the primary factual issue in the case when it found no credible evidence established Walsh loaned money to Rowanoak. The bankruptcy court discussed the capital contributions only in a hypothetical sense, stating that even if the funds from Walsh to Murphy somehow found their way into Rowanoak's accounts, no evidence supported the inference the funds were loans rather than capital contributions. Because the bankruptcy court's conclusion that Walsh did not loan funds to Rowanoak was not clearly erroneous, we find no reversible error in these extraneous comments.

D.

Finally, the Trustee challenges the district court's ruling that the bankruptcy court erred as a matter of law and fact when it found Rowanoak reasonably should have believed it was incurring or intended to incur debts beyond its ability to pay. As discussed above, a transfer is fraudulent under Mass. Gen. Laws ch. 109A, § 5 if the debtor made the transfer without receiving a

-14-

reasonably equivalent value in exchange for the transfer, and the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The bankruptcy court found Rowanoak reasonably should have believed it was incurring or intending to incur debts beyond its ability to pay as they became due. The bankruptcy court based its conclusion "partly on Darragh Murphy's own testimony that the debtor's business and financial condition was declining during 1997." The district court held the bankruptcy erred because it mischaracterized Murphy's testimony. According to the district court, the bankruptcy court "incorrectly summarized" Murphy's testimony because Murphy "did not testify that Rowanoak was failing financially throughout 1997, but rather that the business began to perform poorly in October or the Fall of 1997." (Emphasis in original).

The bankruptcy court's finding was not clearly erroneous. Murphy testified that Rowanoak always had cash flow problems, and had trouble paying its bills as early as 1996. Rowanoak had two outstanding claims for unpaid corporate income tax against it when it made the 1997 payments to Walsh. According to the fiscal year 1997 tax return, by July 1, 1997, liabilities far exceeded assets. And Murphy testified that by October 1997, she realized "things were going badly," and she could not borrow any more money from her

mother.   Thus, the bankruptcy court's finding that Rowanoak reasonably should have believed that paying over $63,000 to Walsh between March and May 1997 would leave it without sufficient assets to pay debts as they became due was not clearly erroneous.   We cannot overturn the bankruptcy court's findings under the clearly erroneous standard simply because we might have decided the case differently.   Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1080 (1st Cir. 1995).   We are not "'left with the definite and firm conviction that a mistake has been committed'" in this case.   Id. (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

## III.

Having affirmed the bankruptcy court on all issues pertaining to its finding Rowanoak's transfers to Walsh were fraudulent under Mass. Gen. Laws ch. 109A, § 5, we need not discuss the bankruptcy court's finding that Rowanoak's transfers to Walsh also were fraudulent under § 6(a).[5]   For the reasons stated, we

---

[5]In reversing the bankruptcy court, the district court appeared to confuse the elements of claims under these two sections.  The district court incorrectly identified the bankruptcy court's finding that the payments to Walsh rendered Rowanoak insolvent as an element of a § 5 claim.   But this finding goes to the Trustee's claim under § 6(a).   See Mass. Gen. Laws ch. 109a, § 6 (transfer is fraudulent under § 6(a) "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and . . . the debtor became insolvent as a result of the transfer or obligation.").   Even if the bankruptcy court's finding that Rowanoak's payments to Walsh rendered Rowanoak insolvent was clearly erroneous, Walsh still must reimburse the payments as

-16-

conclude the district court erred in reversing the bankruptcy court. Accordingly, the judgment of the district court is REVERSED.

---

fraudulent transfers under § 5.