# UNITED STATES COURT OF APPEALS

**UNPUBLISHED**

## FOR THE FOURTH CIRCUIT

In Re: ABATEMENT ENVIRONMENTAL
RESOURCES, INCORPORATED,

*Debtor.*

SCOTT D. FIELD,

*Trustee-Appellant,*

v.

No. 03-1771

UNITED STATES OF AMERICA, on
behalf of Internal Revenue Service,

*Creditor-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Andre M. Davis, District Judge.
(CA-02-4033-8-AMD)

Argued: February 24, 2004

Decided: June 15, 2004

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge King joined. Judge Luttig wrote a separate opinion concurring in the judgment.

## COUNSEL

**ARGUED:** Alan Barry Sternstein, SHULMAN, ROGERS, GAN-DAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellant.

John Schumann, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** James M. Hoffman, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., Rockville, Maryland, for Appellant. Eileen J. O'Connor, Assistant Attorney General, Bruce R. Ellisen, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

GREGORY, Circuit Judge:

Abatement Environmental Resources, Inc. ("Abatement" or "Debtor") filed a petition under Chapter 11 of the Bankruptcy Code (which was later converted to a Chapter 7 action), reporting claims exceeding the assets of the estate. The bankruptcy trustee Scott D. Field (the "Trustee") instituted an adversary proceeding against the United States Internal Revenue Service ("IRS") to recover three alleged fraudulent conveyances. Abatement's owner and principal officer, Joseph Downey ("Downey"), authorized the three payments to be made from corporate accounts to the IRS to satisfy his individual income tax liabilities. On cross-motions for summary judgment, the bankruptcy court granted summary judgment for the Trustee, holding that the Trustee could recover the payments as fraudulent conveyances under Maryland law. The district court reversed, holding that the Trustee's state law fraudulent conveyance claim was barred by Maryland's "voluntary payment" doctrine which prevents recovery from taxing authorities for voluntarily paid taxes, absent a special statutory provision allowing a refund. The Trustee now appeals the district court's reversal.

We find that the Trustee failed to carry his burden of showing that Abatement received no consideration for the transfers to IRS, thus we

conclude that the Debtor cannot advance his claim under the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"). While it is clear that the IRS extended consideration to Downey, rather than to Abatement, by releasing him from his tax liability, it is not clear that Abatement's payment to IRS did not constitute a repayment of a salary, loan, bonus or antecedent debt due Downey. Therefore, we affirm the district court on alternative grounds and do not need to examine the applicability of the voluntary payment doctrine.

I.

In the bankruptcy court, the parties agreed that there was no dispute of material fact and filed cross-motions for summary judgment. We do not engage in a detailed recitation of the facts as the bankruptcy and district courts present full factual discussions in their published opinions. *See United States v. Field (In re Abatement Envtl. Res., Inc.)*, 301 B.R. 830, 831-32 (D. Md. 2003) ("*Abatement II*"); *United States v. Field (In re Abatement Envtl. Res., Inc.)*, 301 B.R. 824, 826-27 (Bankr. D. Md. 2002) ("*Abatement I*").

For the purposes of this appeal, it is sufficient to recount the following facts: Downey is a fugitive who was the owner and principal officer of the Debtor. During 1997 and 1998, he drew three checks on Abatement's corporate checking accounts, totaling $212,000, to pay individual income tax liabilities to the IRS. In 1999, IRS refunded Downey $166,294 resulting from overpayments and withholding credits on his individual income taxes.

In October 1999, Abatement filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Claims against the estate totaled approximately $4,000,000, exceeding the estate's assets and those available for distribution to creditors. In March 2000, the bankruptcy court converted the case into a Chapter 7 proceeding and appointed Field as trustee. In March 2001, Field filed this adversary proceeding against the United States to recover alleged fraudulent conveyances of the Debtor's assets in the amount of $212,000, the total amount of funds Downey transferred to IRS from Abatement's accounts to pay his individual income tax liability. The Trustee brought this action pursuant to 11 U.S.C. §§ 548, 550, or Md. Code Ann. Com. Law §§ 15-204, 15-205, 15-206, 15-207 and 11 U.S.C. § 544(b), request-

ing the bankruptcy court to order that these conveyances be avoided and to enter judgment against the United States.

On cross-motions for summary judgment, the bankruptcy court held that 11 U.S.C. § 548 was unavailable to the Trustee because that section only permits the avoidance of transfers made within one year prior to filing of the bankruptcy petition, and Downey's three checks fell outside the limitations period.[1] The court held, however, that the Trustee could utilize 11 U.S.C. § 544(b)(1), which permits a trustee to avoid certain transfers of the debtor's property if the transfer is voidable under "applicable state law by a creditor holding an unsecured claim," to recover the disputed funds. The court held that under the "applicable state law," provisions of the MUFCA, Md. Code Ann., Com. Law §§ 15-204, 15-205, authorized the Trustee's recovery of fraudulent conveyances from the IRS.[2] Thus, after determining that IRS was an "initial transferee" under 11 U.S.C. § 550(a)(1)[3] against whom the Trustee could recover, the bankruptcy court granted summary judgment for the Trustee on his § 15-204 claim, and ordered IRS to pay the Trustee $212,000. *Abatement I*, 301 B.R. at 829-30.

On appeal, the district court reversed, holding that the MUFCA, in generally permitting the avoidance of fraudulent conveyances, did not supplant Maryland's "voluntary payment" doctrine.[4] *Abatement II*,

---

[1]Neither party has contested the correctness of this holding.

[2]There is no sovereign immunity bar to the Trustee's claim because 11 U.S.C. § 106(a)(1) abrogates the United States' sovereign immunity for actions brought pursuant to 11 U.S.C. § 544(b)(1).

[3]Section 550(a)(1) provides: "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548 . . . of this title, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." The bankruptcy court held that IRS was an "initial transferee" under § 550(a)(1) and was thus liable to the trustee for the transfer of funds. *Abatement I*, 301 B.R. at 828-29.

[4]The doctrine is best summarized as the principle that once a taxpayer voluntarily pays a tax or other governmental charge, under mistake of law or an illegal imposition, no common law action lies for the recovery of that tax absent a special statutory provision sanctioning a refund. *See Apostol v. Anne Arundel County*, 421 A.2d 582, 585 (Md. 1980).

301 B.R. at 834-35. The district court found that Maryland law provided no cause of action to recover a tax voluntarily paid, even if in error or under an illegal imposition, absent a special statutory provision allowing a refund. *Id.* at 833-35. Accordingly, the district court held that the Trustee was barred from recovery against the IRS on his MUFCA claim. *Id.* at 835. The Trustee now appeals.

## II.

We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. *Litton v. Wachovia Bank (In re Litton)*, 330 F.3d 636, 642 (4th Cir. 2003). Specifically, we review the bankruptcy court's factual findings for clear error, while we review questions of law de novo. *Id.*

## III.

This appeal presents an unusual question under Maryland fraudulent conveyance law, namely whether a bankruptcy trustee may recover tax payments made by a debtor, authorized by its principal officer, to satisfy tax liabilities of said officer. This attempt to use a state law fraudulent conveyance action as a tax recovery provision clearly does not conform to the origins or purposes of fraudulent conveyance doctrine. *See infra*. Thus, with that background in mind, we proceed to analyze the application of the MUFCA in this most peculiar context.[5]

---

[5]We note that despite the unusual use of the MUFCA as a vehicle for tax recovery, Trustee Field has attempted to employ this remedy before and has been expressly foreclosed from doing so. In *Field v. Montgomery County, Md. (In re Anton Motors, Inc.)*, 177 B.R. 58 (Bankr. D. Md. 1995), Trustee Field attempted to use the MUFCA to recover as fraudulent conveyances several real property tax payments made by the debtor to cover the personal obligations of that debtor's president. The bankruptcy court held that Maryland's voluntary payment doctrine barred Field from utilizing the MUFCA in such a manner. *Id.* at 66-67. Despite this indistinguishable holding, Trustee Field has repeatedly expressed surprise and dismay that the district court in the instant case followed *In re Anton Motors*, *see Abatement II*, 301 B.R. at 833-35, to bar his recov-

Fraudulent conveyance law has its origins in the Statute of 13 Elizabeth, ch. 5 (1571). *See* 5 *Collier on Bankruptcy* ¶ 548.01 (15th Ed. Revised). The purpose of the fraudulent conveyance doctrine is to prevent assets from being transferred away from a debtor in exchange for less than fair value, leaving a lack of funds to compensate the creditors. *Id.* In the foundational fraudulent conveyance case, *In re Twyne's Case*, 3 Co. Rep. 806, 76 Eng. Rep. 809 (Star Chamber 1601), the Star Chamber examined the facts surrounding such transfers to determine whether they had "signs and marks" of a fraudulent or malicious intent, such as secret transfers, continued ownership or possession of property after its alleged transfer, self-serving representations in transfer documents that the transfer was not intended to defraud creditors, transfers of substantially all assets, or transfers made while action was pending against the transferor. *See also Collier's*, *supra*. In short, fraudulent conveyance law is aimed at preventing debtors from making collusive transfers to others — often friendly recipients — in an attempt to avoid their creditors. *See Fraudulent Conveyance Law & its Proper Domain*, Douglas G. Baird & Thomas H. Jackson, 38 Vand. L. Rev. 829, 830 (1985) ("A debtor cannot manipulate his affairs in order to shortchange his creditors and pocket the difference. Those who collude with a debtor in these transactions are not protected either.").

In the United States, § 67(e) of the 1898 Bankruptcy Act directly copied much of the Statute of 13 Elizabeth. Most states followed suit, either recognizing 13 Elizabeth through common law, or expressly adopting or reenacting it. *See Fick v. Perpetual Title Co.*, 694 A.2d

---

ery despite the fact that neither party argued the voluntary payment doctrine below. *See, e.g.*, Appellant's Br. at 6 ("The District Court reversed the Bankruptcy Court[ ] . . . on a ground that the United States did not argue or even raise in defending against Trustee Field's fraudulent conveyance action . . . . No doubt, that is because the ground is as novel as it is, as a matter of law, incorrect."). Given Trustee Field's apparent failure to appeal *In re Anton Motors* to the district court, and the Maryland Court of Special Appeals' subsequent favorable citation of *In re Anton Motors*, *see Molovinsky v. Fair Employ. Council of Greater Wash., Inc.*, 839 A.2d 755, 765 (Md. Ct. Spec. App. 2003), Field's expressed surprise at the district court's holding appears somewhat disingenuous.

138, 143 (Md. Ct. Spec. App. 1997) (citing 37 C.J.S. *Fraudulent Conveyances* § 2, at 852 (1943)). Maryland adopted the English statute, 1 Alexander's British Statutes 499 (Coe's ed. 1912), which remained in effect until 1920, when the MUFCA was adopted. *See Fick*, 694 A.2d at 143; *see also Clinton Petroleum Servs., Inc. v. Norris*, 319 A.2d 304, 307 (Md. 1974) (stating that the MUFCA "replaced in virtually identical terms the statute of 13 Elizabeth"). The Maryland Court of Appeals remarked of the statute, "[t]he Uniform Act is declaratory of the common law and is practically a restatement of the Statute of 13 Elizabeth." *Westminster Sav. Bank v. Sauble*, 39 A.2d 862, 864 (Md. 1944) (citations omitted); *see also Damazo v. Wahby*, 305 A.2d 138, 141-142 (Md. 1973) (reiterating that the MUFCA is declaratory of common law and did not restrict the legal or equitable remedies already available to a creditor).

Section 15-204 of the MUFCA, under which the bankruptcy court held the Trustee could recover, provides: "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without fair consideration." Md. Code Ann., Com. Law § 15-204. Such a fraudulent conveyance claim thus consists of two elements (1) whether fair consideration was present and (2) whether the transferor is or will be rendered insolvent. *See Lacey v. Van Royen*, 267 A.2d 91, 93-95 (Md. 1970). In this case, it is uncontested that IRS did not directly extend consideration to Abatement in exchange for the $212,000 in tax payments. However, it is entirely unclear whether Abatement received "fair consideration" from Downey, the principal, in exchange for having paid tax liabilities on his behalf.

The MUFCA defines "fair consideration" as follows:

Fair consideration is given for property or an obligation, if:
(1) In exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied; or

(2) The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount

not disproportionately small as compared to the value of the property or obligation obtained.

Md. Code Ann., Com. Law § 15-203.

At oral argument, the court asked Appellant's counsel whether Abatement had received consideration from Downey in exchange for the $212,000 paid to the IRS — whether such consideration from Downey was in the form of monies owed in repayment of salary, bonus, loan or some other obligation for services rendered. Appellant's counsel repeatedly answered that it had made no proffer of a lack of consideration from Downey before the bankruptcy court or the district court, and further expressed that he was uncertain how Abatement's financial records reflected the three checks paid to IRS for Downey's benefit. Given the lack of such showings, we have no way to determine whether the principal's actions were indeed adverse to the corporation, or whether Debtor's transfer to IRS was made to satisfy an obligation to Downey and consideration flowed to Debtor from the third-party. *See Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 485 (4th Cir. 1992) ("It is well settled that reasonably equivalent value can come from one other than the recipient of the payments, a rule which has become known as the indirect benefit rule.") (citing *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979 (2d Cir. 1981)).

As the Second Circuit recognized in *Rubin*, "[t]hree-sided transactions . . . present special difficulties" in determining whether "fair consideration" is present, but "a debtor may sometimes receive 'fair' consideration even though the consideration given for his property or obligation goes initially to a third person." *Id.* at 991. The court further remarked "[i]f the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person *otherwise confers an economic benefit upon the debtor*, then the debtor's net worth has been preserved . . . ." *Id.* (emphasis added); *see also In re Jeffrey Bigelow*, 956 F.2d at 485 ("[T]he focus is whether the net effect of the transaction has depleted the bankruptcy estate.").

Here, there is a distinct possibility that precisely such a situation occurred where Abatement received an economic benefit; *i.e.*, Dow-

ney was owed monies by Abatement, Debtor made the transfer to IRS on Downey's behalf, and its net worth was not reduced because it simply satisfied an outstanding liability. *See, e.g.*, *Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir. 1979) (holding a transaction's benefit to the debtor "need not be direct; it may come indirectly through benefit to a third person"); *Williams v. Twin City Co.*, 251 F.2d 678, 681 (9th Cir. 1958) (analyzing "fair consideration" under the federal bankruptcy act and holding "[c]onsideration can run to a third party, so long as it is given in exchange for the promise sought to be enforced"); *Barr & Creelman Mill & Plumbing Supply Co. v. Zoller*, 109 F.2d 924, 926 (2d Cir. 1940) (good faith novation agreement may constitute consideration); *Hofler v. Marion Lumber Co.*, 233 F. Supp. 540, 543 (D.S.C. 1964) (examining Uniform Fraudulent Conveyance Act and stating, "[c]onsideration, of course, may run to a third party"). In this case, we cannot conclude that Debtor received no consideration for its transfer to the IRS.

At oral argument, the Trustee's counsel contended, however, that the Trustee's failure to show an absence of consideration was of no moment because the IRS had the burden to show that Abatement received no consideration from Downey. In support of this proposition, Appellant's counsel cited *Braunstein v. Walsh (In re Rowanoak Corp.)*, 344 F.3d 126 (1st Cir. 2003). We find *Rowanoak* contrary to the position that Appellant claims it represents.

While *Rowanoak* did not concern the unusual tax recovery theory the Trustee asserts in this case, it did involve a Chapter 7 trustee's action under Massachusetts fraudulent conveyance law.[6] In *Rowanoak*, two years prior to filing for bankruptcy, the debtor corpo-

---

[6]The Massachusetts provision at issue in *Rowanoak* states: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation: . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Mass. Gen. Laws ch. 109A, § 5(a).

ration, Rowanoak, made six payments from its bank account to the mother of its principal. 344 F.3d at 128. The trustee, uncertain about the basis for the checks, filed a motion to compel Rowanoak to turn over its books and records to the trustee. In response, the principal filed an affidavit stating it did not have documents in its possession relevant to payments made by the debtor to the principal's mother. *Id.* The trustee then commenced an adversary proceeding seeking to recover the six payments as fraudulent conveyances. In response, the principal's mother claimed that the checks represented payments on various pre-petition loans made by the principal to the company. Unlike the instant case, the bankruptcy court held an evidentiary hearing, and heard testimony from the principal, her mother and the trustee, and considered evidence of "canceled checks, check registers, and credit card statements." *Id.* at 129. After considering the evidence, the court concluded that all of the checks from the principal's mother had been made payable to the principal, not the corporation, and that Rowanoak's tax returns did not identify any outstanding loans to the principal's mother. *Id.*

The First Circuit held that "the Trustee undisputably has the burden of proving the transfers were fraudulent, and this burden never shifts to [principal's mother]." *Id.* at 131. The court continued, "to meet his prima facie burden, *the Trustee had to present sufficient evidence to establish the negative proposition that [principal's mother] did not loan funds to Rowanoak*." *Id.* at 132 (emphasis added). The court concluded that the trustee carried that burden by "present[ing] evidence that no documents, such as a promissory note, mortgage, or security interest supported [principal's mother's claim] that she had loaned money to Rowanoak." *Id.* Although *Rowanoak* does not feature the third-party complication at issue here — specifically, did the debtor pay transferee to satisfy an obligation to principal — it clearly rejects the proposition Appellant claims it represents, namely that the transferee, not the debtor, has the burden to show lack of consideration.[7]

---

[7]During the bankruptcy court proceeding, although the IRS mistakenly argued that Downey, not Abatement, was the transferor, it correctly noted that the Trustee failed to carry his burden to "show that the debtor did not receive reasonably equivalent value in exchange for the money taken by Downey," *see* IRS's Bankr. Ct. Br. at 17 (citing cases), and that "[t]he trustee has proffered no evidence whatsoever that the debtor

*See also Oles Envelope Corp. v. Oles*, 65 A.2d 899, 903 (Md. 1949) ("Where a conveyance is valid on its face, the burden of proof is upon the party attacking the conveyance to show either (1) that it was not made upon a good consideration, or (2) that it was made with a fraudulent intent on the part of the grantor to hinder, delay or defraud his creditors . . . .") (citations omitted); *Totten v. Brady*, 54 Md. 170 (1880) ("The burden of proof is upon the complainants to show that the deeds in question were made without consideration . . . ."); *Colandrea v. Union Home Loan Corp. (In re Colandrea)*, 17 B.R. 568, 579 (Bankr. D. Md. 1982) (holding that trustee "proved that no consideration flowed to [debtor] in exchange for the mortgage," and only after trustee showed the absence of any consideration "Maryland law placed the burden of proof as to the solvency of the transferor upon the party claiming under the conveyance"); *Gen. Elec. Credit Corp. v. Murphy (In re Duque Rodriguez)*, 895 F.2d 725, 726 n.1 (11th Cir. 1990) (burden of proving "reasonably equivalent" value under fraudulent conveyance provision of 11 U.S.C. § 548(a)(2)(A) lies with the trustee challenging the transfer); *Rubin*, 661 F.2d. at 993 (stating that the trustee has the burden of proving the absence of "fair consideration") (citations omitted).[8] Because the Trustee has failed to carry his burden to show that Abatement received no fair consideration from Downey, or another source, as a result of its transfer to IRS, we conclude that he cannot satisfy the MUFCA.

received less than reasonably equivalent value in exchange for the transfers at issue in this case. The transfers to and by Downey, the president, C.E.O. and ultimate shareholder of the debtor, could have been payment of salary, repayment of a loan, or repayment of the debtor's expenses." *Id.*

[8]Despite the Trustee's error as to who bears the burden of establishing the absence of consideration, as *Colandrea* and other cases recognize, the Trustee is correct that the burden of showing solvency to defeat a fraudulent conveyance action lies with the transferee. *See Lacey*, 267 A.2d at 98 ("[T]he burden of proving the solvency of the debtor, that is, that he retained sufficient means to pay his debts after the voluntary conveyance, is on the transferee.") (internal quotation marks and citation omitted). Yet because the Trustee failed to present evidence on the consideration prong, examination of the solvency prong is unnecessary.

Although it is clear that Abatement owed no money directly to IRS, the Trustee has offered no evidence to show that the company received no consideration from a third party, specifically Downey, for the transfer. Thus, to allow the Trustee to prevail merely upon a showing that Abatement received no consideration from the transferee would undercut the purposes of the fraudulent conveyance doctrine. In analyzing fraudulent conveyances, Professor Glenn wrote of whether a transfer was for value that "the test is whether, as a result of the transaction, the debtor's estate was unfairly diminished." 1 Gerrard Glenn, Fraudulent Conveyances and Preferences § 275 (rev. ed. 1940); *see also Westminster Sav. Bank*, 39 A.2d at 863 ("The object of the statute was to aid in the suppression of fraud by protecting creditors from any conveyances by debtors to relatives or friends under the pretext of discharging a moral obligation."). Under the facts as presented by the Trustee, we cannot conclude that Abatement's estate was unfairly diminished by the transfer to IRS. *See* 3 *Norton Bankruptcy Law & Practice* 2d § 58:2 (1997 & Supp. 2003) (recognizing that under federal fraudulent conveyance law, like Maryland law, "'[v]alue' includes the satisfaction of antecedent debt. Thus, a fraudulent conveyance can occur where the debtor transfers property for the benefit of a third party and receives no property or debt reduction in return."). If Abatement owed sums to Downey, the payment to IRS — *i.e.*, satisfaction of an "antecedent debt" constituting fair consideration pursuant to Md. Code Ann., Com. Law § 15-203(a) — did not unfairly diminish the company's estate, rather it merely satisfied a preexisting obligation.

IV.

Because Trustee Field failed to establish that Abatement received no consideration from its principal Downey or another third-party source for its payment to IRS on behalf of Downey, Appellant cannot recover under the MUFCA. Accordingly, we do not need to examine the district court's conclusion that Maryland's "voluntary payment" doctrine serves as a bar to the MUFCA.

*AFFIRMED*

LUTTIG, Circuit Judge, concurring in the judgment:

I concur only in the judgment reached by the court today.