In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1480

IN RE:

EQUIPMENT ACQUISITION RESOURCES, INC., *Debtor.*

APPEAL OF:

UNITED STATES OF AMERICA

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 05045 — **Edmond E. Chang**, *Judge.*

ARGUED DECEMBER 2, 2013 — DECIDED FEBRUARY 4, 2014

Before BAUER and FLAUM, *Circuit Judges*, and VAN BOKKELEN, *District Judge.**

FLAUM, *Circuit Judge*. This case concerns whether a bankruptcy trustee can bring an action under § 544(b)(1) of the Bankruptcy Code to recoup a debtor's federal tax payment. Section 544(b)(1) allows a trustee to step into the shoes of an actual creditor who could have avoided the transfer outside

---

* Of the Northern District of Indiana, sitting by designation.

bankruptcy using a state-law cause of action. The federal government's sovereign immunity prevents creditors from suing the IRS using state law. However, another section of the Bankruptcy Code, § 106(a)(1), abrogates the government's sovereign immunity "with respect to" § 544.

The trustee's ability to recover federal tax payments thus hinges on the interplay between § 544 and § 106. The courts below, relying on § 106(a)(1), concluded that a debtor in possession could use § 544(b)(1) to bring an Illinois fraudulent-transfer action against the IRS. But we find that § 106(a)(1) does not displace the actual-creditor requirement in § 544(b)(1). Ordinarily, a creditor cannot bring an Illinois fraudulent-transfer claim against the IRS; therefore, under § 544(b)(1), neither can the debtor in possession. We reverse in favor of the United States.

## I. Background

Equipment Acquisition Resources, Inc. ("EAR"), an Illinois subchapter S corporation, filed for Chapter 11 bankruptcy in October 2009. In the years before its petition, EAR made nine federal income tax payments to the IRS on behalf of its shareholders. (Subchapter S corporations do not pay taxes on corporate income; instead, the tax liability is passed through to the corporation's shareholders.) EAR made eight of these payments in the two years preceding its petition. The ninth payment was just outside this period.

Once in Chapter 11, EAR, acting as debtor in possession,[1] filed an adversary complaint against the United States seek-

---

[1] In a Chapter 11 bankruptcy, the debtor in possession can exercise most of the powers of a trustee. 11 U.S.C. § 1107(a).

ing to recover all nine payments as fraudulent transfers. EAR sought to recover the eight most recent payments under 11 U.S.C. § 548(a)(1), which provides a cause of action for the recovery of transfers made within two years of the filing. It sought to recover the ninth under 11 U.S.C. § 544(b), the provision (described above) that enables a trustee to bring a state-law fraudulent-transfer action. Illinois, like most states, has adopted the Uniform Fraudulent Transfer Act, which has a four-year statute of limitations. 740 Ill. Comp. Stat. Ann. 160/5(a)(2), 160/10. EAR asserted that the Bankruptcy Code's abrogation of the government's sovereign immunity "with respect to" both § 548 and § 544 precluded the IRS from claiming immunity as a defense to either theory of recovery. *See* 11 U.S.C. § 106(a)(1).

The parties reached a settlement. The United States agreed to disgorge the eight payments that EAR could recover using § 548, but contested EAR's ability to recover the ninth payment under § 544(b). Because the federal government's sovereign immunity ordinarily prevents a creditor from bringing an Illinois fraudulent-transfer action against the IRS, the government argued, the ninth tax payment was not "voidable under applicable law by a creditor holding an unsecured claim." *Id.* § 544(b)(1). The parties thus agreed that the United States would disgorge the ninth payment only if it could not prevail in its motion to dismiss the § 544(b) count in EAR's complaint.

The bankruptcy court rejected the government's theory. 451 B.R. 454 (Bankr. N.D. Ill. 2011). The court found that § 106(a)(1) communicated Congress's intent to abolish the federal government's immunity from suit under the listed bankruptcy causes of action, including § 544. This general

waiver, the court reasoned, showed that "Congress intended to include those state law causes of action available under § 544(b)(1)." *Id.* at 464. The court grounded its conclusion in "[t]he plain, unambiguous language of § 106, the deliberate inclusion of § 544 in § 106(a), and the policy consideration favoring recovery for the benefit of all creditors." *Id.*

The United States appealed to the district court, which affirmed. 485 B.R. 586 (N.D. Ill. 2013). The district court framed the dispute as "whether § 544(b), which explicitly limits a trustee's ability to avoid a transfer, overrides § 106(a)'s abrogation of sovereign immunity." *Id.* at 592. It agreed with the bankruptcy court that § 106's "complete abolishment" of the government's sovereign immunity in bankruptcy carried the day. *Id.* at 593. "It simply does not matter *how* a sovereign immunity defense is invoked against EAR's claim," the district court held, because "106(a)(1) simply eliminates the obstacle wherever it appears 'with respect to' § 544." *Id.* (emphasis added). The United States appeals.

## II. Discussion

This case concerns the proper interpretation of the Bankruptcy Code. We decide this legal question de novo. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009).

## A.

As we have mentioned, EAR's action implicates two different Code provisions: § 548 and § 544(b). Section 548 provides a stand-alone cause of action for the recovery of fraudulent transfers. *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer … of an interest of the debtor in property … that was made … on or within 2 years before the date

of the filing of the petition, if [certain criteria are met].”). Because § 548 is included in § 106(a)(1)’s list of Code provisions for which sovereign immunity is abrogated—and because the cause of action is a creature of the Code itself—the United States does not assert immunity as a defense to EAR’s recovery under that provision.

Section 544(b) is a different matter, however. Unlike § 548, § 544(b) is derivative of state law—that is, law external to the Bankruptcy Code. Section 544(b)(1) authorizes the trustee to avoid transfers that are “voidable under applicable law by a creditor holding an unsecured claim.” Usually, the “applicable law” is a state’s fraudulent-transfer statute. *See In re Xonics Photochem., Inc.*, 841 F.2d 198, 202 (7th Cir. 1988). This provision enables the trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate.

Section 544(b) is unique in another regard: its terms require the actual existence of an unsecured creditor that could have brought the state-law action itself. ”If there are no creditors against whom the transfer is voidable under the applicable law, the trustee is powerless to act under section 544(b)(1).” 5 *Collier on Bankruptcy* ¶ 544.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013); *see also In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) (“The avoidance power provided in section 544(b) is distinct from others because a trustee or debtor in possession can use this power only if there is an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action.”). In other words, the trustee stands in the shoes of an actual unsecured creditor. And if the actual creditor could

not succeed for any reason—whether due to the statute of limitations, estoppel, res judicata, waiver, or any other defense—then the trustee is similarly barred and cannot avoid the transfer. 5 *Collier on Bankruptcy* ¶ 544.06[3]. By contrast, there is no such limitation in § 548. The trustee stands in its own shoes and exercises rights bestowed by the Bankruptcy Code itself.

The question dividing the parties is whether the Code's abrogation of sovereign immunity "with respect to" § 544 allows a debtor in possession to bring a state-law fraudulent-transfer suit against the federal government—even though, outside of bankruptcy, sovereign immunity would bar a regular creditor from doing so. We find that § 106(a)(1) confers no such right.

### B.

The Supreme Court has instructed that when it comes to questions of a federal agency's liability, we must undertake "two analytically distinct inquiries." *FDIC v. Meyer*, 510 U.S. 471, 484 (1994) (internal quotation marks omitted). "The first inquiry is whether there has been a waiver of sovereign immunity." *Id.* No issue there; all parties agree, based on § 106(a)(1), that there has been. But once this question is answered, "the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Id. That* question is the crux of this appeal: whether the source of substantive law upon which EAR relies—§ 544(b) and, derivatively, the Illinois Uniform Fraudulent Transfer Act—provides an avenue for relief against the IRS.

In answering it, EAR and the courts below lay claim to the statutory-interpretation high ground—the plain language of the text. They maintain that § 106(a)(1) is unambiguous: it states that the federal government's "sovereign immunity is abrogated … with respect to," among other provisions, § 544. Therefore, the argument goes, the United States cannot assert a sovereign immunity defense, in any form, to a § 544(b)(1) action.

This argument misses the point. The United States is not contesting the meaning of § 106(a). Its argument derives from the plain language of *§ 544(b)*. That provision, by its very terms, requires EAR to show that a creditor exists who could use a state's "applicable law" to recover the payment from the IRS. If no such creditor exists, then the trustee cannot bring the claim. And there is no question that no creditor exists in this case—even the district court acknowledged that an unsecured creditor would have been barred from bringing an Illinois fraudulent-transfer action against the IRS outside of bankruptcy. 485 B.R. at 593. Thus, because no unsecured creditor could obtain relief against the United States using the Illinois Uniform Fraudulent Transfer Act, EAR's tax payment is not "voidable under applicable law" within the meaning of § 544(b)(1). We find that Congress did not alter § 544(b)'s substantive requirements merely by stating that the federal government's immunity was abrogated "with respect to" this provision.

EAR's argument to the contrary draws support from other bankruptcy courts, which have reasoned that "[b]y including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sov-

ereign immunity defense could no longer be asserted." *In re C.F. Foods, L.P.*, 265 B.R. 71, 85 (Bankr. E.D. Pa. 2001). But we cannot credit arguments about congressional intent when they run counter to a provision's unambiguous text. *See, e.g., Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Here, § 544(b) is unambiguous: the trustee may only recover transfers that are "voidable under applicable law by a creditor holding an unsecured claim." We decline EAR's invitation to read an exception into this provision based on its arguments about what § 106(a)(1) was meant to accomplish. This invitation "runs smack into the Supreme Court's insistence that judges implement the Bankruptcy Code as written, rather than make changes that they see as improvements." *In re New Energy Corp.*, No. 13-2501, 2014 WL 145274, at *2 (7th Cir. Jan. 15, 2014) (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012)).

We also note that there may be other reasons why § 544(b)'s actual-creditor requirement is not satisfied here. Even if federal sovereign immunity were not an issue, a creditor who attempts to wield the Illinois Uniform Fraudulent Transfer Act against the IRS outside of bankruptcy would face significant constitutional obstacles. For one thing, states cannot enforce their laws so as to retrieve money from the federal coffers: the Appropriations Clause of the Constitution "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990); *accord id.* at 426 (holding that the Appropriations Clause precludes the federal government's liability under an equitable estoppel theory). For another, the Supremacy

Clause prevents states from enabling their residents to re-
cover tax payments directly from the United States. *Cf.*
*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819)
("[S]tates have no power, by taxation or otherwise, to retard,
impede, burden, or in any manner control, the operations of
the constitutional laws enacted by congress to carry into exe-
cution the powers vested in the general government."").
Thus, sovereign immunity is just one reason why there is no
applicable state law that would enable a creditor to recover
from the IRS outside of bankruptcy. The courts below were
mistaken in their assumption that if Congress eliminated the
sovereign-immunity problem (which, as stated, we find that
Congress did not do), these other obstacles disappeared,
too.

"An absence of immunity does not result in liability if
the substantive law in question is not intended to reach the
federal entity." *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*,
540 U.S. 736, 744 (2004). Nothing in § 106(a)(1) gives the trus-
tee greater rights to avoid transfers than the unsecured cred-
itor would have under state law. By concluding that
§ 106(a)(1) did just that, the courts below erred.

## C.

This is an issue of first impression for any circuit court of
appeals.[2] We acknowledge that by interpreting § 106(a)(1)

---

[2] In *In re Abatement Environmental Resources, Inc.*, 102 F. App'x 272
(4th Cir. 2004), the Fourth Circuit held that the trustee in that case had
not established that the debtor's tax payments to the IRS constituted
fraudulent transfers under Maryland's Uniform Fraudulent Conveyance
Act. The Fourth Circuit noted in a footnote that "[t]here is no sovereign
immunity bar to the Trustee's [MUFCA] claim because 11 U.S.C.
§ 106(a)(1) abrogates the United States' sovereign immunity for actions

and § 544(b) as we have, we diverge from all of the bank-
ruptcy and district courts to consider the issue in the context
of the federal government.[3] In our opinion, those courts (fol-
lowing the example of the earliest case, *In re C.F. Foods*) fo-
cused too narrowly on the language in § 106(a)(1), and large-
ly disregarded § 544(b)'s actual-creditor requirement. And
we do not find their key arguments in favor of EAR's read-
ing persuasive.

First, we do not agree that the United States' interpreta-
tion renders § 106(a)(1)'s abrogation of immunity with re-
spect to § 544 "almost meaningless." *In re Custom Contractors,
LLC*, 439 B.R. 544, 549 (Bankr. S.D. Fla. 2010). Sec-
tion 106(a)(1) abrogates sovereign immunity for any "gov-

---

brought pursuant to 11 U.S.C. § 544(b)(1)." *Id.* at 274 n.2. Given the case's
disposition, however, that single sentence is dicta.

[3] *See In re Pharm. Distrib. Servs., Inc.*, 455 B.R. 817, 821 (Bankr. S.D.
Fla. 2011) (finding that § 106(a)(1) enabled the trustee to bring a § 544(b)
action against the IRS using state fraudulent-transfer law); *In re Custom
Contractors, LLC*, 439 B.R. 544, 548–49 (Bankr. S.D. Fla. 2010) (same); *In re
C.F. Foods, L.P.*, 265 B.R. 71, 84–86 (Bankr. E.D. Pa. 2001) (same). *But see In
re Grubbs Constr. Co.*, 321 B.R. 346, 351–52 (Bankr. M.D. Fla. 2005) (hold-
ing that the trustee could not bring a § 544(b) action against the state of
Florida—even though Florida had waived its immunity in the bankrupt-
cy proceeding—because state sovereign immunity bars a creditor from
bringing a Florida fraudulent-transfer action against the state); *In re
Abatement Envtl. Res., Inc.*, 301 B.R. 830, 832–36 (D. Md. 2003) (holding
that the trustee could not recover a tax payment to the IRS using § 544(b)
"because the claim is barred by an immunity to which governmental
units with taxing authority are entitled under Maryland law"); *In re An-
ton Motors, Inc.*, 177 B.R. 58, 65–66 (Bankr. D. Md. 1995) (holding that the
trustee could not assert a § 544(b) action against a Maryland county be-
cause Maryland's fraudulent-transfer law cannot be used to recover tax
payments).

ernmental unit." This term encompasses not just the federal government, but also state and local governments. *See* 11 U.S.C. § 101(27). So if any state waived its own or a local government's immunity to fraudulent-transfer actions in the state's courts, the interplay of sections 106(a)(1) and 544(b)(1) would enable the trustee to bring the same action in the bankruptcy court.

Moreover, § 544(b) constitutes only half of § 544. There is also § 544(a). Known as the strong-arm power, § 544(a) authorizes the trustee to assume the rights of a hypothetical judgment lien creditor, execution creditor, or bona fide purchaser; the trustee can then knock off unperfected security interests so that the previously secured collateral becomes part of the estate. Crucially, subsection (a), unlike subsection (b), "empowers the trustee to avoid certain prebankruptcy transfers that could have been avoided by certain types of creditors or a bona fide purchaser, *whether or not such creditors or a bona fide purchaser actually exist*." 5 *Collier on Bankruptcy* ¶ 544.01. And 28 U.S.C. § 2410 permits judgment lien creditors, execution creditors, and bona fide purchasers to quiet title to property on which the United States claims a lien—so there is no external sovereign-immunity obstacle to the trustee's employing § 544(a) against the federal government. Thus, the strong-arm clause could also explain why Congress included § 544 in § 106(a)'s list.

Unconvinced, the bankruptcy court below reasoned that if this interpretation were correct, Congress would have specified that it was abrogating immunity with respect to § 544(a) only. *See* 451 B.R. at 465 ("As is evident in numerous provisions of the Code, Congress knows how to specify applicable subsections and paragraphs when it wishes to do

so."). Setting aside the fact that the abrogation still has some application to § 544(b), we still find this responsive unpersuasive. All of the fifty-nine provisions listed in § 106(a)(1) cite to a Code provision generally, without listing particular subsections. Yet, as the United States correctly points out, many of the listed provisions have subsections that do not implicate sovereign immunity.[4] We believe the better conclusion is that Congress simply listed undivided Code sections if any part of that section included something for which sovereign immunity should be waived.

*In re C.F. Foods* and its progeny also invoke the legislative history surrounding § 106(a). This history cannot overcome the unambiguous language in § 544(b), *see, e.g.*, *Newsom v. Friedman*, 76 F.3d 813, 816–17 (7th Cir. 1996), and in any event, is no help at all. The House Report accompanying the Bankruptcy Reform Act of 1994 indicated that Congress reworked § 106 to respond to the Supreme Court's decisions in *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96 (1989), and *United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992). H.R. Rep. No. 103-835, at 42 (1994). In both cases, the Court found that the predecessor to the current § 106 was not sufficiently explicit to waive the state and federal governments' immunity with respect to bankruptcy causes of action. Neither case involved a trustee's power under § 544(b) to bring state-law actions, though. Thus, Congress's apparent disapproval of the results in *Hoffman* and *Nordic Village* sheds no light on the present dispute.

---

[4] To take the government's example, § 524 is included in § 106(a)(1)'s list, but § 524(f) only states that a debtor may voluntarily repay a debt after its discharge—a situation to which sovereign immunity has no application at all.

Finally, these lower courts argue that policy considerations favor their reading. They figure that it makes sense for Congress to have wanted the trustee to use state fraudulent-transfer actions against the federal government because "[a]ny recovery by the bankruptcy trustee will benefit *all* of the debtor's creditors, including the IRS. Moreover, enhancement of the rights of others to the detriment of the federal government, particularly in the government's capacity as tax collector, is commonplace, including within the Bankruptcy Code itself." *In re C.F. Foods*, 265 B.R. at 86. True, it would not be anomalous for Congress to design a scheme that maximizes the estate's recovery. But all of the trustee's avoidance tools contain substantive limitations. We do not see why Congress would implicitly relax these limitations just because the federal government is the one disgorging the property.

Moreover, there are countervailing policy concerns that favor our interpretation. It is one thing for Congress to expose federal agencies to fraudulent-transfer suits on the Bankruptcy Code's terms—under § 548, for example. But it is quite another for Congress to expose federal agencies to suit based on "applicable" state law, the dimensions of which Congress cannot control. A state could have a statute of limitation for such actions that extends past the typical four years. Indeed, some do.[5] And state legislatures could relax the criteria for what constitutes a fraudulent transfer, render-

---

[5] These include Iowa, Iowa Code Ann. § 684.9 (five years); Kentucky, Ky. Rev. Stat. Ann. § 413.120 (five years); Maine, Me. Rev. Stat. Ann. tit. 14, § 3580 (six years); Michigan, Mich. Comp. Laws Ann. §§ 566.39, 600.5813 (six years); Minnesota, Minn. Stat. Ann. § 541.05 (six years); New York, N.Y. C.P.L.R. § 213 (six years).

ing federal tax revenue even more vulnerable to unexpected recovery actions. It would make sense for Congress to be cognizant of the IRS's "exceedingly strong interest in financial stability." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 12 (2008).

This is consistent with the judicial presumption that when it comes to sovereign immunity, ties go to the government. The Supreme Court has repeatedly warned against interpretations that expand the scope of the government's liability beyond the point where its consent is unequivocal. *E.g.*, *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012) ("For the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign."). In fact, the Court has instructed that where there exists a plausible interpretation of a provision that would preserve immunity—even if that interpretation is not the only reading available—that "is enough to establish that a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted." *Nordic Village*, 503 U.S. at 37. To be clear, we do not need to rely on the presumption against waiver to resolve this dispute. We find the substantive requirements of § 544(b)(1) unambiguous, and those requirements are simply not met with respect to EAR's action. But the Court's insistence that Congress be unmistakably clear when opening the federal government to suit is further reason why we cannot find that Congress did so implicitly. If Congress intends to eliminate § 544(b)'s actual-creditor requirement in actions against the federal government, it must say so.

### III. Conclusion

We are confident that by continuing to enforce the actual-creditor requirement in § 544(b) as written, we do no disservice to the Code's abrogation-of-immunity provision. EAR, acting with the state-law avoidance powers of an unsecured creditor, does not have a viable cause of action against the United States to avoid the tax payment at issue. We REVERSE the judgment of the district court and REMAND with instructions to dismiss EAR's complaint insofar as it relied on § 544 of the Bankruptcy Code.