**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE DBSI, INC.,
                              *Debtor*,

JAMES R. ZAZZALI, as Trustee for the
DBSI Estate Litigation Trust,
                 *Plaintiff-Appellee*,

v.

UNITED STATES OF AMERICA,
                 *Defendant-Appellant*.

No. 16-35597

D.C. No.
1:13-cv-00086-
MJP

OPINION

Appeal from the United States District Court
for the District of Idaho
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted May 17, 2017
Seattle, Washington

Filed August 31, 2017

Before:  Michael Daly Hawkins, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

# SUMMARY[*]

## Bankruptcy

The panel affirmed the district court's decision affirming the bankruptcy court's order denying in part the motion of the United States to dismiss an adversary proceeding filed by a chapter 11 bankruptcy trustee, seeking avoidance of the debtor's federal tax payment.

The trustee sought to avoid the tax payment as a fraudulent transfer under 11 U.S.C. § 544(b)(1) and Idaho's Uniform Fraudulent Transfer Act.  Disagreeing with the Seventh Circuit, the panel held that the abrogation of sovereign immunity in 11 U.S.C. § 106(a)(1) "with respect to" § 544(b)(1) extended to the derivative Idaho law, and no additional waiver of sovereign immunity was necessary. Accordingly, the government could not rely on sovereign immunity to prevent the avoidance of the tax payments.

The panel addressed the trustee's cross-appeal in a concurrently filed memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ivan Clay Dale (argued), Thomas J. Clark, and Gilbert S. Rothenberg, Attorneys; Diana L. Erbsen, Deputy Assistant Attorney General; Caroline D. Ciraolo, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

Jennifer A. Hradil (argued), Mark B. Conlan, Michael F. Quinn, and Brett S. Theisen, Gibbons P.C., Newark, New Jersey, for Plaintiff-Appellee.

Carolyn Wade, Senior Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Oregon Department of Justice, Salem, Oregon; Karen Cordry, Bankruptcy Counsel, National Association of Attorneys General, Washington, D.C.; for Amici Curiae States of Idaho, Illinois, Montana, Nebraska, New Mexico, New York, and Oregon.

Professor Stephen J. Lubben, Seton Hall University School of Law, Newark, New Jersey, for Amicus Curiae National Association of Bankruptcy Trustees.

**OPINION**

PAEZ, Circuit Judge:

We must decide whether a bankruptcy trustee can, through an adversary proceeding, avoid a debtor's federal tax payment, or whether the Internal Revenue Service's ("IRS" or "government") sovereign immunity prevents such relief. To resolve this question, we must consider the interplay between two Bankruptcy Code statutes: 11 U.S.C. §§ 106(a)(1) ("Section 106(a)(1)") and 544(b)(1) ("Section 544(b)(1)"). In Section 106(a)(1), Congress unambiguously abrogated sovereign immunity "with respect to" Section 544(b)(1). Under Section 544(b)(1), a trustee may avoid fraudulent transfers when the trustee can demonstrate that an actual unsecured creditor could avoid the same transfer under "applicable law" outside of bankruptcy. This is known as the "actual creditor" or "triggering creditor" requirement as it requires the existence of an actual creditor in whose shoes a trustee can stand. *See* 5 *Collier on Bankruptcy* ¶ 544.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017).

Here, James R. Zazzali ("Zazzali" or "Trustee") invoked Idaho's Uniform Fraudulent Transfer Act ("UFTA"), Idaho Code Ann. §§ 55-901[1] *et seq*., as the "applicable law" to bring a Section 544(b)(1) adversary action to avoid $17 million in tax payments that the debtor, DBSI, Inc., fraudulently transferred to the IRS. An unsecured creditor who seeks to

---

[1] In 2015, Idaho amended and renumbered certain sections of Title 55 of the Idaho Code by adopting the Uniform Voidable Transactions Act. *See* H.R. 92, 63d Leg., 1st Reg. Sess. (Idaho 2015). All references in this opinion to the Idaho Code Annotated are to those statutes in effect during the period in question.

avoid such tax payments under Idaho law outside of bankruptcy would be precluded from doing so because of the government's sovereign immunity. The question, then, is whether, in the bankruptcy context, Congress's abrogation of sovereign immunity with respect to Section 544(b)(1) extends to the underlying state cause of action, or whether a trustee must also establish that Congress has waived sovereign immunity with respect to Idaho's UFTA.

Both the bankruptcy court and the district court ruled that Section 106(a)(1)'s abrogation of sovereign immunity "with respect to" Section 544(b)(1) extends to the derivative "applicable law"—here, Idaho's UFTA. In other words, an additional waiver of sovereign immunity was not necessary. As a result, the government could not rely on sovereign immunity to prevent the avoidance of the tax payments at issue. We agree, and affirm.[2]

## I.

DBSI, Inc. and its affiliated entities, including FOR 1031, DDRS, and DBSI Investments (collectively, "DBSI"), engaged in the acquisition, development, management, and sale of commercial real estate properties throughout the United States. They did so, however, through an illegal Ponzi scheme—during their last two years in operation they purportedly lost $3 million per month and used new investor funds to meet existing obligations. This scheme eventually caught up with them, and in May 2013, the United States indicted several of the company insiders, who were later

---

[2] We have jurisdiction pursuant to 28 U.S.C. § 158(d) and review de novo issues of statutory interpretation. *See, e.g.*, *In re Acequia, Inc.*, 34 F.3d 800, 809 (9th Cir. 1994).

convicted of various fraud crimes. Their convictions were affirmed by our court.

DBSI was set up as an S corporation, and, while still in operation, made tax payments on behalf of its shareholders. Tax payments were handled in this manner because S corporations do not themselves pay taxes on corporate income, but rather the tax liability is passed through to the corporation's shareholders. I.R.C. §§ 1363, 1366. Between 2005 and 2008, DBSI paid the IRS a total of approximately $17 million in tax payments on behalf of its shareholders. The vast majority of these payments were made on behalf of Doug Swenson ("Swenson") and Thomas Var Reeve ("Reeve"), two of the largest shareholders. The IRS ultimately refunded approximately $3.6 million to Swenson and Reeve in claimed overpayments of their individual income tax liabilities.

In November 2008, DBSI filed for bankruptcy. A plan of liquidation was confirmed in October 2010, and, as part of that plan, Zazzali was appointed as trustee to administer the DBSI Estate Liquidation Trust. Shortly thereafter, Zazzali commenced an adversary proceeding in bankruptcy court to recover DBSI's allegedly fraudulent transfers to (1) company insiders, and (2) the IRS and taxing authorities of twenty-five states on behalf of company shareholders. This appeal concerns only those transfers that were made to the IRS.[3]

In bringing his claims against the IRS, Zazzali relied on two different sections of the Bankruptcy Code: 11 U.S.C.

---

[3] The states settled with Zazzali, although several of them, along with a few other interested states, filed an amicus brief ("State Amici") urging reversal in support of the United States.

§ 548 ("Section 548") and, as discussed above, Section 544(b)(1). Section 548 and Section 544(b)(1) both permit a trustee to avoid transfers, however they impose different statutes of limitations. Section 548 has a two-year statute of limitations, while Section 544(b)(1) incorporates the statute of limitations of the applicable law. Here, Idaho's UFTA has a four-year statute of limitations. Idaho Code Ann. § 55-918. Accordingly, pursuant to Section 548, Zazzali sought to recover transfers in the amount of approximately $56,000 that were made in the two years prior to the bankruptcy petition date. The government did not contest this claim. Under Section 544(b)(1), Zazzali sought to recover the remaining portion of the $17 million by avoiding transfers that were made within four years of the petition date.

The government moved to dismiss Zazzali's Section 544(b)(1) counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Bankr. P. 7012(b). The government argued that Congress had not abrogated sovereign immunity with respect to the Section 544(b)(1) underlying state law cause of action, and therefore, there was no unsecured creditor who could sue the government under Idaho's UFTA. The bankruptcy court rejected this argument and concluded that Section 106(a)(1)'s waiver of sovereign immunity permitted the Trustee's suit to proceed. The government appealed the bankruptcy court's ruling to the district court. While the government's appeal was pending, the Seventh Circuit decided *In re Equipment Acquisition Resources, Inc.* ("*EAR*"), 742 F.3d 743 (7th Cir. 2014), which analyzed the identical issue before the district court, and which is at issue in the current appeal. The Seventh Circuit came to the opposite conclusion as the bankruptcy court, and held that Section 106(a)(1)'s waiver of sovereign immunity does not extend to Section 544(b)(1)'s

derivative state law claim. Nonetheless, the district court was unpersuaded by the Seventh Circuit's reasoning, and affirmed the bankruptcy court's ruling. Further, the district court declined to certify for interlocutory appeal its order affirming the denial of the government's motion to dismiss.

Because the adversary proceeding had been transferred to the district court pursuant to a motion by Swenson and his fellow defendants, proceedings continued in that court with respect to the merits of Zazzali's fraudulent transfer claims. The parties ultimately filed cross-motions for summary judgment. In its motion for summary judgment, the government conceded that the payments made to the IRS were fraudulent and that, pursuant to Section 548(a)(1)(A), Section 544(b)(1), and Idaho Code Ann. § 55-913(1)(a),**⁴** Zazzali could avoid any transfer made within four years of filing his bankruptcy petition. However, relying on Idaho Code Ann. § 55-917(1),**⁵** the government asserted an affirmative defense—that it received the payments or transfers in good faith and for value. The district court's resolution of the summary judgment motions turned on whether the government could prove the elements of its affirmative defense. The district court first concluded that the

---

**⁴** Idaho Code Ann. § 55-913(1)(a) states, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor."

**⁵** Idaho Code Ann. § 55-917(1) states, "A transfer or obligation is not voidable under section 55-913(1)(a), Idaho Code, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

government did not receive the payments for value, stating that "[e]very legal theory offered by the [g]overnment to defend its right to retain this transfer seems to ignore the fact that the money at issue here is the proceeds of a widespread and devastating fraudulent scheme, stolen from scores of investors." The court likewise concluded that the government did not receive the transfers in good faith. In sum, the district court concluded that the government failed to establish its affirmative defense, and thus Zazzali, as a matter of law, was entitled to avoid the fraudulent transfers. The government does not challenge this ruling.

The court, however, still had to determine the extent to which Zazzali could recover the transfers. In its motion for summary judgment, the government argued that, even if the court were to reject its affirmative defense, Zazzali was not entitled to recover approximately $3.6 million of the fraudulent transfers because it already refunded that amount as tax overpayments to the shareholder-taxpayers. The district court agreed, concluding that the IRS was not an "initial transferee" within the meaning of 11 U.S.C. § 550(a)(1) ("Section 550(a)(1)"), and therefore the approximately $3.6 million that the IRS already paid out as tax overpayments was not subject to recovery.[6]

Having resolved all issues, the district court entered judgment directing the IRS to return approximately $13.4 million of the total $17 million in fraudulent tax transfers. The government asks us to reverse this part of the district

---

[6] In a cross-appeal, Zazzali challenges the district court's conclusion that the $3.6 million in refunded tax payments is not subject to recovery from the IRS. We address Zazzali's cross-appeal, No. 16-35598, in a concurrently filed memorandum disposition.

court's judgment and hold that sovereign immunity precludes the return of the $13.4 million. We decline to do so, and affirm the district court's ruling.

## II.

### A.

Section 544(b)(1), in relevant part, provides that a "trustee may *avoid any transfer* of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law* by a creditor holding an unsecured claim . . . ." (emphasis added). By its terms, Section 544(b)(1) requires the existence of an actual creditor who could avoid the transfer. 5 *Collier on Bankruptcy* ¶ 544.01. In other words, the effect of this section is "to clothe the trustee with no new or additional right in the premises over that possessed by a creditor, but simply puts him in the shoes of the latter." *Id.* ¶ 544.06[3] (quoting *Davis v. Wiley*, 263 F. 588, 589 (N.D. Cal. 1920), *aff'd*, 273 F. 397 (9th Cir. 1921)); *see also Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1201 (9th Cir. 2005). "[I]f the actual creditor could not succeed for any reason—whether due to the statute of limitations, estoppel, res judicata, waiver, or any other defense—then the trustee is similarly barred and cannot avoid the transfer." *EAR*, 742 F.3d at 746; *accord In re Acequia, Inc.*, 34 F.3d 800, 809 (9th Cir. 1994) ("[l]ike Prometheus bound, the trustee is chained to the rights of [such] creditors").

Here, because the substantive law for Zazzali's Section 544(b)(1) claim is Idaho's UFTA, it is undisputed that there is no actual unsecured creditor who could pursue such a claim against the IRS outside of bankruptcy; the government's sovereign immunity would preclude any such claim. The

government argues that because there is no actual unsecured creditor who could bring such a claim, Zazzali is likewise precluded from bringing a Section 544(b)(1) claim in bankruptcy court. We disagree. The government ignores that Section 544(b)(1) does not exist in a vacuum; rather, it must be read in concert with other sections of the Bankruptcy Code. And, here, as the government readily acknowledges, Section 106(a)(1) unambiguously abrogates the federal government's sovereign immunity "with respect to Section 544." In other words, Section 106(a)(1)'s abrogation of sovereign immunity is absolute with respect to Section 544(b)(1) and thus necessarily includes the derivative state law claim on which a Section 544(b)(1) claim is based.[7]

In the following discussion, we begin with well-settled canons of statutory interpretation that inform our understanding of the interplay between Section 106(a)(1) and Section 544(b)(1); next we address our divergence from the Seventh Circuit's reasoning in *EAR*; and finally, we observe that our holding conforms with the Bankruptcy Code's overall purpose.

---

[7] We note that on appeal one of Zazzali's primary arguments is that because Section 544(b)(1) addresses the "avoidance" of transfers, as opposed to the "recovery" of the actual payments, a waiver of sovereign immunity with respect to Section 544(b)(1) is unnecessary. *See, e.g.*, 5 *Collier on Bankruptcy* ¶ 550.01 (discussing the difference between avoiding a transfer and recovering from the transferee). Although we acknowledge that the concepts of "avoidance" and "recovery" are distinct, we see no need to address Zazzali's argument as the text of Section 106(a)(1) is clear—sovereign immunity has been waived with respect to Section 544(b)(1).

**B.**

**1.**

To ascertain the meaning of Sections 106(a)(1) and 544(b)(1), we must look not only to the "particular statutory language at issue" but also to "the language and design of the statute as a whole." *K Mart Corp v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also Carpenters Health & Welfare Tr. Funds v. Robertson (In re Rufener Constr.)*, 53 F.3d 1064, 1067 (9th Cir. 1995). Statutory construction is a "holistic endeavor," *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988), that relies on context to be "a preliminary determinant of meaning," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 168 (2012). Here, read in light of Section 106(a)(1)'s clear abrogation of sovereign immunity, Section 544(b)(1) can only mean one thing: a trustee need only identify an unsecured creditor, who, but for sovereign immunity, could bring an avoidance action against the IRS.

Section 544(b)(1) plainly states that the "trustee may avoid any transfer . . . that is voidable under applicable law." But, we cannot read the plain text of Section 544(b)(1)—i.e., the triggering creditor requirement—devoid of the declaration in Section 106(a)(1) that "sovereign immunity is abrogated as to a governmental unit . . . with respect to Section[] . . . 544." *See also In re Equip. Acquisition Res., Inc.*, 485 B.R. 586, 593 (Bankr. N.D. Ill. 2013), *judgment rev'd by EAR*, 742 F.3d 743 ("[S]overeign immunity is completely abolished with respect to Section[] . . . 544." (internal quotation marks omitted)). "It simply does not matter how a sovereign immunity defense is invoked against [Trustee]'s claims

[because] Section 106(a)(1) . . . eliminates the obstacle wherever it appears 'with respect to' § 544 . . . ." *Id.* In other words, Congress's waiver of sovereign immunity is unequivocal under Section 106(a)(1).[8]

**2.**

Our interpretation of the interplay between Section 106(a)(1) and Section 544(b)(1) is bolstered by the fact that Section 106(a)(1) was enacted after Section 544(b)(1). *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). "The classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *Id.* at 143 (internal quotation marks and citation omitted). Here, when Congress waived sovereign immunity with respect to Section 544, Congress understood that Section 544(b)(1) codified a trustee's powers to invoke state law. *See* S. Rep. 95-989, at 85 (1978), *as reprinted in* U.S.C.C.A.N. 5787, 5871. Even more importantly, those powers were deep rooted, and had existed since at least the

---

[8] In *United States v. Nordic Village, Inc.*, 503 U.S. 30, 39 (1992), the Supreme Court made it unmistakably clear that for Congress to waive sovereign immunity it must do so "unequivocal[ly]." As a result, Congress amended Section 106(a)(1) in 1994, at least in part, as a response to *Nordic Village*. H.R. Rep. 103-835, at 42 (1994); *see also Norton Bankr. L. & Prac. 3d* § 14:4. After acknowledging the Supreme Court's holding in *Nordic Village*, Congress stated that "[t]his amendment expressly provides for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving the sovereign immunity of the States and the Federal Government in this regard." *Id.*

Bankruptcy Act of 1898.  Bankruptcy Act of 1898 § 70(e), ch. 541, 30 Stat. 544 (1898); *see also Norton Bankr. L. & Prac. 2d* § 63:7 (1997); *accord Stellwagen v. Clum*, 245 U.S. 605, 614 (1918); *Moore v. Bay*, 284 U.S. 4 (1931).  Since we presume that "Congress understands the state of existing law when it legislates," *Bowen v. Massachusetts*, 487 U.S. 879, 896 (1988), it is clear that "[b]y including [Section] 544 in the list of Bankruptcy Code sections set forth in [Section] 106(a)(1), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71, 85 (Bankr. E.D. Pa. 2001).

### 3.

Finally, the interpretation offered by the government would essentially nullify Section 106(a)(1)'s effect on Section 544(b)(1), an interpretation we should avoid.  *See, e.g.*, *United States v. Powell*, 6 F.3d 611, 614 (9th Cir. 1993) ("It is a basic rule of statutory construction that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless." (internal quotation marks and citation omitted)).  Adopting the government's position would mean that Section 106(a)(1)'s abrogation of sovereign immunity would have no effect on Section 544(b)(1) because a trustee would always need to demonstrate that Congress provided for a separate waiver of sovereign immunity with respect to any "applicable law."  As one bankruptcy court deftly put it,

> Why would Congress explicitly waive
> sovereign immunity for all other avoidance

> actions under the Bankruptcy Code, and include a waiver of sovereign immunity for actions under section 544 knowing that section 544 encompasses state law theories, but then require a separate waiver of sovereign immunity for the necessary state law component in actions under section 544?

*Furr v. U.S. Dep't of Treasury (In re Pharmacy Distrib. Servs., Inc.)*, 455 B.R. 817, 821 (Bankr. S.D. Fla. 2011). The government insists that Section 106(a)(1)'s waiver of sovereign immunity would not be rendered meaningless if we adopted its approach. However, we find the government's arguments unavailing.

First, the government notes that the waiver of sovereign immunity would still apply to Section 544(a) because Section 544(a) contains no triggering creditor requirement. Although this is true, it is beside the point. Surely, had Congress intended to limit Section 106(a)(1)'s application to Section 544(a), as opposed to all of Section 544, it knew how to do so. In fact, elsewhere in the Bankruptcy Code, Congress has demonstrated that it knows how to make a specific provision only applicable to a subsection of Section 544. *See, e.g.*, 11 U.S.C. § 546(c)(1), (d), (h); *id.* § 541(b)(4); *see also Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and citation omitted)).

Second, the government explains that Section 106(a)(1) applies not only to the federal government but to all

governmental entities.    This is true: Section 106(a)(1)
abrogates sovereign immunity for all "governmental units,"
which the Bankruptcy Code defines to include, among other
entities, states and municipalities. 11 U.S.C. § 101(27). The
government then asserts that as long as state or local
municipalities have waived sovereign immunity to permit
fraudulent transfer actions against their governments, Section
106(a)(1)'s waiver with respect to Section 544(b)(1) would
serve a purpose.[9]    But this assertion suffers from the same
fundamental flaw as the government's underlying argument.
If a state or local municipality has already waived sovereign
immunity, Section 106(a)(1)'s waiver of immunity is
unnecessary and adds nothing.[10]    We agree with the
bankruptcy court that the government's interpretation would
render Section 106(a)(1)'s application to Section 544(b)(1)
practically meaningless, and therefore it is an interpretation
to which we cannot subscribe.

---

[9] The government notes, for example, that states like Illinois,
Connecticut, New York, and Ohio have such general waivers of immunity.
705 Ill. Comp. Stat. § 505/8(a) (allowing claims under Illinois state law to
be brought against the State in its court of claims); Conn. Gen. Stat. § 4-
142 (allowing claims against the state to be brought through an Office of
the Claims Commissioner); N.Y. Ct. Cl. Act § 8 (authorizing suits if
brought in court of claims); Ohio Rev. Code Ann. § 2743.02(A)(1) (same).

[10] State Amici argue that interpreting Section 106(a)(1)'s waiver of
sovereign immunity to apply to the underlying state law causes of action
raises constitutional concerns by subjecting states to non-uniform
bankruptcy laws.  State Amici acknowledge that Congress has the ability
to waive state sovereign immunity under the Bankruptcy Clause of the
Constitution, but they nonetheless argue that this right derives from the
fact that states have agreed to subordinate their sovereign immunity to
*uniform* laws.  While there may be outer limits to Congress's power to
waive state sovereign immunity under the Bankruptcy Code, *see Cent. Va.
Cmty. Coll. v. Katz*, 546 U.S. 356, 378 n.15 (2006), we need not, and do
not, address that issue here as it is not before us.

In sum, we conclude that the text of Section 106(a)(1) is unambiguous and clearly abrogates sovereign immunity as to Section 544(b)(1), including the underlying state law cause of action. In interpreting these statutes in this manner, we are mindful of the Supreme Court's instruction that where a plausible interpretation of a provision that would preserve immunity is available, we should adopt that interpretation and preserve the government's sovereign immunity. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 37 (1992). But, here, we do not believe there is an alternative construction that is plausible: Congress unambiguously and unequivocally waived sovereign immunity for causes of action brought under Section 544(b)(1). To construe the statutes in the manner in which the government proposes would be to ignore the plain text of Section 106(a)(1), something we are not at liberty to due. *See, e.g.*, *United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *see also Conn. 47Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

## C.

## 1.

We recognize that our opinion conflicts with the Seventh Circuit's opinion in *EAR*, the only other case to have addressed the interplay between Section 106(a)(1) and

Section 544(b)(1).[11] We turn briefly to the Seventh Circuit's opinion and the reasons why we disagree with its analysis.

In *EAR*, the Seventh Circuit addressed a nearly identical situation, but reached the opposite result. The Seventh Circuit, drawing from *FDIC v. Meyer*, 510 U.S. 471 (1994), employed a two-step framework to determine the IRS's liability. In doing so, the Seventh Circuit explained that to determine the IRS's liability, a court must "undertake two analytically distinct inquiries . . . [t]he first inquiry is whether there has been a waiver of sovereign immunity . . . the second inquiry . . . is [] whether the source of substantive law upon which the claimant relies provides an avenue for relief." *EAR*, 742 F.3d at 747 (quoting *Meyer*, 510 U.S. at 484) (internal quotation marks and citations omitted). Applying this framework, the Seventh Circuit first acknowledged that there is no issue as to the first inquiry—everyone agrees that with the adoption of Section 106(a)(1) Congress has waived sovereign immunity with respect to Section 544(b)(1). *Id.* at 746–47. Proceeding to the second inquiry, the Seventh Circuit looked at the applicable law for the trustee's Section

---

[11] Although the Seventh Circuit is the only other circuit to have addressed the issue in a published opinion, bankruptcy courts and district courts throughout the nation have nearly uniformly adopted a statutory construction in line with our holding today. *See, e.g.*, *VMI Liquidating Tr. Dated December 16, 2011 v. United States (In re Valley Mortg., Inc.)*, No. 10-19101-SBB, 2013 WL 5314369 (Bankr. D. Colo. Sept. 18, 2013); *Furr v. U.S. Dep't of Treasury (In re Pharmacy Distrib. Servs., Inc.)*, 455 B.R. 817 (Bankr. S.D. Fla. 2011); *Menotte v. United States (In re Custom Contractors, LLC)*, 439 B.R. 544 (Bankr. S.D. Fla. 2010); *Sharp v. United States (In re SK Foods, L.P.)*, No. 09-229162-D-11, 2010 WL 6431702 (Bankr. E.D. Cal. July 14, 2010); *Tolz v. United States (In re Brandon Overseas, Inc.)*, No. 08-11035-BKC-RBR, 2010 WL 2812944 (Bankr. S.D. Fla. July 16, 2010); *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71 (Bankr. E.D. Pa. 2001).

544(b)(1) cause of action—the Illinois Uniform Fraudulent Transfer Act—and determined that it did not provide an avenue for relief because any unsecured creditor who attempted to bring such a claim against the IRS in Illinois would be barred from doing so by the government's sovereign immunity. The Seventh Circuit concluded that Section 106(a)(1)'s abrogation of sovereign immunity with respect to Section 544(b)(1) did not "alter [Section] 544(b)'s substantive requirements merely by stating that the federal government's authority was abrogated 'with respect to' that provision." *Id.*

**2.**

*Meyer* sets out a useful framework for analyzing whether sovereign immunity precludes an action against the government. Our disagreement with the Seventh Circuit is at step two, as all parties agree that Congress has unambiguously waived sovereign immunity. Therefore, we focus our discussion on whether Section 544(b)(1) and Idaho's UFTA—the substantive law on which Zazzali relies for his fraudulent transfer cause of action—provide an avenue for relief, or, in other words, envision the government as a potential defendant.

First, the fact that Congress waived sovereign immunity with respect to Section 544(b)(1) leaves no doubt that both Section 544(b)(1), and the derivative state law, provide a substantive cause of action against the government. It would defy logic to waive sovereign immunity as to a claim which could not be brought against the government. In general, a government defendant does not need immunity from a suit which cannot be brought.

Second, the statutory definitions of the relevant parties—creditors and debtors—further demonstrate that Section 544(b)(1), and the derivative law upon which it relies, contemplate suits against the government. *See U.S. Postal Serv. v. Flamingo Indus.*, 540 U.S. 736, 744–56 (2004) (analyzing the Sherman Act's, 15 U.S.C. § 1 *et seq.*, definition of "person" to conclude that the statute contemplates a government defendant). Under both the Bankruptcy Code and Idaho's UFTA, debtors and creditors are defined to include the government. *See* 11 U.S.C. §§ 101(10), (13), (15), (41); Idaho Code §§ 55-910(4), (9). In turn, both Section 544(b)(1) and Idaho's UFTA provide a substantive cause of action against the government—i.e., an avenue for relief. *See Meyer*, 510 U.S. at 484. The Seventh Circuit's conclusion to the contrary is not persuasive. Under the Seventh Circuit's approach, a substantive cause of action against the government would exist only if Congress also waived sovereign immunity with respect to the particular applicable law under Section 544(b)(1). To impose such a requirement, as discussed above, would be contrary to the plain text of Section 106(a)(1).

In sum, although *Meyer*'s general framework is helpful, we reach an alternate conclusion to the Seventh Circuit.

**3.**

We note one other area in which we disagree with the Seventh Circuit's reasoning in *EAR*. Both the government and the Seventh Circuit suggest that the result we reach today runs afoul not only of sovereign immunity, but also potentially of the Appropriations Clause and the Supremacy Clause. *EAR*, 742 F.3d at 747–48. According to the Seventh Circuit: "Even if federal sovereign immunity were not an

issue, a creditor who attempts to wield the Illinois Uniform Fraudulent Transfer Act against the IRS outside of bankruptcy would face significant constitutional obstacles." *Id.* While it may be true that an unsecured creditor who seeks to bring such claims against the IRS in state court would face constitutional obstacles, that is irrelevant to our inquiry as our holding is limited only to the rights of a trustee to bring fraudulent transfer actions in bankruptcy.

As to the Appropriations Clause, the Seventh Circuit, in dicta, notes that it precludes any creditor from recovering against the federal government in a state court because money cannot be taken from the treasury without congressional approval. *Id.* at 748. But this is of no moment because Section 544(b)(1) says nothing about recovery; a trustee must only demonstrate that the transfer is "voidable under applicable law."[12] The recovery of fraudulent transfers is authorized by *federal* law—Section 550(a)(1)—and Congress has waived sovereign immunity with respect to that provision. 11 U.S.C. § 106(a)(1). In other words, we agree with the Seventh Circuit that Congress must approve the release of funds from its coffers, *see Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990), but here it has done so through Sections 106(a)(1) and 550(a)(1). Thus, we fail to share the Seventh Circuit's concern that there may be an Appropriations Clause issue here.

As to the Supremacy Clause, the Seventh Circuit suggests, again in dicta, that the interpretation of the interplay

---

[12] "[T]he Bankruptcy Code enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." *In re Acequia*, 34 F.3d at 809 (internal quotation marks and citation omitted); *see also* 5 *Collier on Bankruptcy* ¶ 550.01.

between Section 106(a)(1) and Section 544(b)(1) that we reach today is erroneous because "the Supremacy Clause prevents states from enabling their residents to recover tax payments directly from the United States." *EAR*, 742 F.3d at 748.[13]  But, again, this suggestion ignores the federal nature of a claim under Section 544(b)(1).  Section 544(b)(1) does not authorize a trustee to bring an avoidance action in state court, rather the statute permits a trustee to pursue a *federal* cause of action in bankruptcy court.  *VMI Liquidating Tr. Dated December 16, 2011 v. United States (In re Valley Mortg., Inc.)*, No. 10-19101-SBB, 2013 WL 5314369, at *5 (Bankr. D. Colo. Sept. 18, 2013).  Simply put, we fail to see any Supremacy Clause issue here.[14]

---

[13] Again, we note that the Seventh Circuit conflates the concepts of avoidance and recovery.  Section 544(b)(1), by its terms, says nothing of recovery.

[14] In its opening brief, the government argues that the Internal Revenue Code (I.R.C.) preempts Zazzali's claims.  Aside from the fact, as explained *supra*, that Zazzali's claims are federal causes of action and therefore cannot be preempted, the government's argument fails for another reason.  The government argues that Section 7422 of the I.R.C., which is "applicable when taxes have been improperly assessed or are not otherwise properly due," *In re Valley Mortg., Inc.*, 2013 WL 5314369, at *5, preempts Zazzali's avoidance claims.   But I.R.C. § 7422 is inapplicable here because "the trustee is not standing in the shoes of the debtors, as taxpayers, seeking to recover tax refunds, but rather, in the shoes of a creditor seeking to recover property fraudulently transferred . . . ."  *Id.* (quoting *In re SK Foods, L.P.*, 2010 WL 6431702, at *4).  "In short, I.R.C. section 7422 simply has no bearing on [our] interpretation of . . . [S]ections 544 and 106 . . . ."  *Id.* at *6.

**D.**

We close by noting that although not necessary to our disposition since we conclude the statutes are unambiguous, our interpretation is supported by both equitable principles and the "object and policy" of the Bankruptcy Code. *See Kelly v. Robinson*, 479 U.S. 36, 43 (1986) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222 (1986))). "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, [and] the equitable distribution of that property among the debtor's creditors . . . ." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 364 (2006). In allowing for the avoidability of transfers made to the IRS, Congress ensured that the IRS is on equal footing with all other creditors. *See* S. Rep. No. 95-989, at 90 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5876. As the Tenth Circuit explained in *In re Franklin Savings Corp.*, 385 F.3d 1279, 1290 (10th Cir. 2004), the waiver of sovereign immunity contained in the Bankruptcy Code "is based on equity[;] in essence, it would be unfair for a governmental unit to participate in the distributions of a bankruptcy case while at the same time shielding itself from liability." (internal quotation marks and citation omitted).

Congress provided for a waiver of sovereign immunity "with respect to" Section 544 because it aligns with the primary goal of federal bankruptcy law—collecting and preserving a debtor's assets for equitable distribution among *all* creditors. *See, e.g.*, *Sherwood Partners*, 394 F.3d at 1204–05.

## III.

We affirm the district court's judgment that sovereign immunity does not preclude Zazzali from avoiding the $17 million in tax payments that were fraudulently transferred to the IRS. We likewise affirm the district court's judgment that the government must return the funds received as tax payments, except as to the amount already paid out as refunds. We remand for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED and REMANDED.**